**IN THE COURT OF APPEALS OF IOWA**

No. 14-1016
Filed October 1, 2014

**IN THE INTEREST OF M.F. and A.A.,**
        **Minor Children,**

**S.F., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Linn County, Susan Flaherty, Associate Juvenile Judge.

A mother appeals from the juvenile court's modification of a permanency order.  **AFFIRMED.**

Robin Miller, Marion, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Jerry Vander Sanden, County Attorney, and William Croghan, Assistant County Attorney, for appellee.

Zachary Crowdes, for father.

Julie Trachta of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

The mother appeals from a juvenile court order maintaining the child, A.A., in out-of-home placement and modifying the permanency goal. The mother contends the juvenile court erred in transferring custody and guardianship of A.A. to a foster parent and changing the permanency goal of the case from reunification with the parent to reunification with another suitable adult. She contends there was not clear and convincing evidence the child could not be returned to her home. We affirm.[1]

A.A. was removed by temporary order from the mother's custody in December 2012 due to allegations the mother abused methamphetamine in the home. The mother has a prior founded child abuse assessment for denial of critical care when she used methamphetamine in the home on a prior occasion. The mother has a history of substance abuse and associating with drug users. She has prior convictions for child endangerment and possession of a controlled substance and has served time in jail and prison. A.A. has also been the subject of a prior child in need of assistance (CINA) adjudication. A.A. has lived with the mother only sporadically over her lifetime between the mother's incarcerations and time spent living with other family and friends. Following the removal, the court ordered the mother to undergo drug testing, obtain a psychological

---

[1] The mother has a second child, M.F., who also was a subject of the permanency order. The juvenile court made factual and legal findings regarding M.F. and maintained her placement with her biological father, who is different from A.A.'s biological father. The mother does not appeal the juvenile court's orders as to M.F. A.A.'s father does not join in the appeal regarding A.A.

evaluation and follow its recommendations, and obtain a substance abuse evaluation and follow its recommendations.

At the time of the December 2012 removal, A.A. was eleven years old. Although the original permanency goal was to reunite A.A. with her father, who resided Nebraska, during the pendency of this case, he was sentenced to serve several years in federal prison on drug charges. The court subsequently modified the permanency goal to reunification with either parent, anticipating the mother would meet the reunification goals set for her. The court placed A.A. with a suitable adult in a home where she has resided throughout this case.

In January 2013, the mother stipulated to a child in need of assistance adjudication pursuant to Iowa Code section 232.2(6)(n) (2013).[2] The court found, "continuation of the child in the parental home would be contrary to the welfare of the child[ ] because the mother's use of illegal substances impairs her ability to provide the child[ ] with adequate care and supervision as well as a safe, stable home."

In September 2013, eleven months after removal, the juvenile court found the mother had taken steps to address her mental health and substance abuse issues, and there were compelling reasons not to proceed to termination of her parental rights. DHS also believed the mother might be able to resume custody. DHS reported the mother had been complying with drug testing and had tested clean since August 2013. She attended substance abuse treatment on an out-

---

[2] Iowa Code section 232.2(6)(n) provides a "child in need of assistance" includes a child "[w]hose parent's or guardian's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not having adequate care."

patient basis as well as individual and weekly group treatment. She completed a mental health evaluation, was diagnosed with several mental health disorders, and began attending therapy. Therefore, with DHS's recommendation, the court extended the reunification goal for a further six months, pursuant to Iowa Code section 232.104(2)(b). However, by May 2014, the mother's progress had slowed enough that DHS no longer recommended reunification with the mother. The State applied to modify A.A.'s permanency goal from reunification with a parent to living with another suitable adult. A.A. had been out of the parental home around eighteen months.[3] The court set a hearing on the application for modification for June 2014.

At the hearing, DHS reported the mother's mental health therapist recommended that the mother continue to find support to maintain her sobriety as her sobriety still appeared to be fragile. The mother had declined to participate in a twelve-step program or take medication because she felt they would not be helpful to her. DHS also was concerned that the mother still appeared to be spending time in bars and with people who were drinking, increasing her risk of relapse.

The mother had moved several times during the CINA case. In July 2013, she moved in with a friend, however, in January 2014, they got in a fight, and the

---

[3] DHS and the court deemed adoption inappropriate, given A.A.'s age. A.A. is not interested in adoption and would be required to give her consent. She also has expressed a desire to maintain contact with her mother and father.

Prior to the modification hearing, A.A.'s foster parent informed DHS she was not willing to care for A.A. permanently. DHS continued to recommend placement with another suitable adult, not reunification with the mother. DHS began investigating other options for A.A.'s placement. At the modification hearing, however, the foster parent changed her mind and stated she did want to keep A.A. in her home permanently.

mother moved out. She moved in with the maternal grandmother, who has an ongoing alcohol abuse problem. In February, the mother started a temporary job. Around that time, the mother represented to DHS that she would be able to move into a home of her own soon, but she still lived with the maternal grandmother at the time of the modification hearing. She also acknowledged that living with an active drinker was not good for her sobriety. She testified she could not yet afford to move out on her own. She further testified if she were hired permanently at her temporary position, she would make more money and be able to find an apartment.

Also in February, DHS had discovered that the mother had been having unauthorized overnight visitations at the maternal grandmother's home for the preceding six weeks. The mother stated she felt pressured to take the child overnight by the foster parent.[4] These visits occurred six times before DHS became aware of them. Despite multiple opportunities, the mother had never disclosed these visits to DHS. Prior to this, the mother had semi-supervised visitation but, when DHS learned of the unauthorized visits, they reinstated fully-supervised visitation. During one of these unauthorized visits, the mother left the child at the maternal grandmother's home overnight, went out with a friend, and did not return. DHS was concerned about the mother's dishonesty and the safety of the child on these visits. DHS also reported the maternal grandmother's

---

[4] Although the mother testified she felt A.A.'s foster parent pressured her to take A.A. overnight, the mother herself called M.F.'s foster parent and asked if M.F. could join A.A. with the mother at the maternal grandmother's home for an overnight visit. The mother also testified she knew she was not authorized to visit either child overnight. The foster parent testified she was aware of the overnight visits and thought they were a step toward reunification, but she did not place pressure on the mother to take A.A.

home is not a safe place for the child to be, even for visits, due to the maternal grandmother's ongoing alcohol abuse problem. The child has reported the maternal grandmother has been drunk in her presence, has yelled at her and called her names, and has driven her around in a car while drunk.

Following the modification petition and hearing, the juvenile court entered a permanency order modifying A.A.'s permanency plan from reunification with a parent to placement with a suitable adult, pursuant to Iowa Code section 232.104(2)(d)(1), and maintaining A.A.'s placement with the foster parent. The juvenile court found, pursuant to Iowa Code section 232.104(3)(c), A.A. could not be returned to the mother's care at the time of the hearing. The mother appeals from the permanency order.

We review CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). We give weight to the factual findings of the juvenile court, especially regarding the credibility of witnesses, but we are not bound by those findings. *Id.* Our primary concern is the best interest of the child. *Id.*

Following a permanency determination continuing out-of-home placement of a child for an additional six months, the juvenile court may modify the permanency order by transferring guardianship and custody of the child to a suitable person. *See* Iowa Code § 232.104(2)(d)(1). Prior to entering a permanency modification order, the State must show by clear and convincing evidence that (a) termination of the parent-child relationship would not be in the child's best interest; (b) services were offered to correct the situation which led to the child's removal; and (c) the child cannot be returned to the child's home. *See*

Iowa Code § 232.104(3). The juvenile court found that due to her "inability to establish a safe, stable residence for herself and her child," her "dishonesty in dealing with" DHS, and her lack of compliance with court orders, A.A. could not be returned to the mother's care. The mother contends there was not clear and convincing evidence that A.A. could not be returned to her home.

The mother submits she has been complying with drug testing and has tested clean since August 2013. She asserts there is no credible evidence she has actually been using alcohol, despite DHS's concerns about her activities and her living situation. She insists substance abuse is no longer an issue in the case. Rather, she claims housing was the main issue at the modification hearing. She insists she has stable housing with her mother, and will soon have housing of her own that will be appropriate for A.A.

We are not convinced that substance abuse is no longer an issue for the mother, because her lifestyle involves living with an active alcoholic and meeting with people in bars. We also find the mother's insistence that the maternal grandmother's home is safe and stable housing troubling. It is clear from her own testimony and from A.A.'s experiences that the maternal grandmother's home is not safe and stable housing for either the mother or A.A. The mother has acknowledged the maternal grandmother has an alcohol abuse problem, and that this is not a safe environment for someone working to maintain sobriety. It is also unsafe to expose A.A. to a person who regularly abuses alcohol, drives her around while drunk, and verbally abuses her. The mother testified and insisted she soon would be able to move out and find her own housing; however, she had

been employed since February 2014 and could not yet afford housing. She testified she might be able to in the near future, but this is the same statement she has been making since February. The mother also has already had one six-month extension to achieve reunification.

Although the mother has made progress in seeking substance abuse and mental health treatment, at the time of the modification hearing, the evidence was clear and convincing that A.A. could not be returned to her care. Thus, we affirm the juvenile court's modification of the permanency order.

**AFFIRMED.**